WESTERN ADJUSTMENT & INSPECTION CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100778. Promulgated November 18, 1941.

*Tim G. Lowry, Esq.*, for the petitioner.
*E. G. Sievers, Esq.*, for the respondent.

**OPINION.**

ARNOLD: The petitioner filed income tax returns for 1936 and 1937 showing taxable income for each year. It now contends that it had no taxable income in such years because it derived no income from the operation of its business for its separate use, benefit, or disposal in excess of $12 a share of its outstanding stock. It claims that all excess charges above $12 a share of its outstanding stock retained by it were contractually owing and refundable to its customers under article 14 of its bylaws in proportion to the volume of business transacted and by virtue of its written and printed representations to customers that it acted as a service organization not operated for profit and adjusted insurance losses at cost.

Article 14, in force and effect from 1895 to December 22, 1936, expressly refers to "surplus of this company arising from earnings other than interest earnings." This indicates that the petitioner expected to acquire a surplus consisting of earnings derived from its business in excess of $12 per share.

"Cost" and "profit" are terms of equivocal meaning. The petitioner from the time of its organization in 1885 to 1937, inclusive, used payments received from its customers for the purchase of furniture and fixtures and other equipment, which it charged to expense of operation in the year of purchase in determining profits. In 1936 and 1937 there were charged to expense approximately $45,000 and $56,000, respectively, which amounts represented the costs of equipment and

were treated as capital expenditures on its returns. The board of directors of petitioner determined what expenditures represented "cost." The directors determined that a reserve be established of approximately $400,000 for the purpose of providing funds for business expansion and contingencies and to carry on the business in a safe and convenient manner. It is indicated that this was regarded as a cost of operating the business. The charges in excess of cost retained for such purpose were credited to a reserve for contingencies and expansion, thus negativing the claim of liability to customers for charges in excess of actual operating cost. Excess charges retained by petitioner and not rebated were not divided in any year "in proportions which each customer's total charges bear to the total charges for the year" and credited to accounts of customers. Cf. *Midland Cooperative Wholesale*, 44 B. T A. 824. The board of directors retained control of such funds, and expended amounts therefrom from time to time for business purposes of the corporation. No objections were made by any customers, whether stockholders or nonstockholders. No claim was made by any customer for any rebate of such reserve or any other funds retained by the corporation or expended by it for furniture and equipment and establishment of branch offices. The equipment and branch offices and excess charges retained by petitioner were the property and a part of the business of petitioner. Obviously such excess charges were received and used by the petitioner for its "separate use, benefit or disposal" and hence were income as defined in *Eisner* v. *Macomber*, 252 U. S. 189. In *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, the Court stated as follows:

\* \* \* If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. \* \* \*

See also *Cleveland Railway Co.* v. *Commissioner*, 36 Fed. (2d) 347; certiorari denied, 281 U. S. 743; *Co-operative Oil Association* v. *Commissioner*, 115 Fed. (2d) 666.

The petitioner claims that it is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936. The petitioner's bylaw restricting payment of dividends to 6 percent per annum of the par value of its paid-in capital and paid-in surplus and representations made by petitioner in letters and booklets issued by it to customers to the effect that it rendered services at cost and was not operated for profit do not constitute a "written contract executed by the corporation" within the meaning of section 26 (c) (1). A written contract under that section refers to "routine contracts dealing with ordinary debts." *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46; *Crane-*

*Johnson Co.* v. *Helvering*, 311 U. S. 54. A corporate bylaw is not a "written contract executed by the corporation" within the meaning of the section. *Davison-Joseph Campau Realty Co.*, 41 B. T. A. 675. Written and printed representations made by petitioner in the course of its business to its customers may be the basis of an implied contract, but do not constitute "a written contract executed by the corporation." That its customers may have, by virtue of petitioner's bylaw and its representation, an enforceable right to have the charges in excess of cost rebated to them is immaterial and not determinative of petitioner's right to the credit claimed. Such rights of petitioner's customers, if any, are founded upon an implied contract and not upon a written contract executed by petitioner. Substantive law or state statutory law is not applicable here. The provisions of a Federal revenue statute determine whether petitioner is entitled to the credit claimed. Section 26 (c) (1) grants a credit under certain conditions. Such a tax law must be strictly construed. *Crane-Johnson Co.* v. *Commissioner*, 105 Fed. (2d) 740; affd., 311 U. S. 54. There being no written contract executed by the corporation as required by section 26 (c) (1), the petitioner is not entitled in the taxable years involved to the credit granted thereunder.

The petitioner claims a bad debt deduction of $10,587.05. During a period of years prior to 1936, items of expense incurred in connection with adjusting losses were overlooked and not charged or billed to the customers. This was due to a faulty system of reporting expenses and bookkeeping. In 1936 the system of handling such items was changed. After being billed, the customer closed its file and considered the case closed and settled in full. There is no evidence to show that these items were ever charged to the customer for whom the expense was incurred. The items were not treated as debts owing to petitioner. Apparently no attempt was made to bill or collect the items. It is indicated that the items were carried in an account designated loss expense and the customers for whom the expenses were incurred were not identified. The item was not ascertained to be worthless. It was considered to be uncollectible because the cases in which the expenses were incurred were closed so far as the customers were concerned. Section 23 (k) of the Revenue Act of 1936 allows the deduction of "debts ascertained to be worthless." No statutory provision is made for the deduction of expense items which are uncollectible due to failure of taxpayer to bill its customers therefor. This item represents an accumulation of expenses incurred by the petitioner in the course of its business. It is not allowable as a bad debt deduction in 1936.

In 1937 the petitioner received from the Uniform Printing & Supply Co. $3,756.80 representing rebates on account of supplies purchased

over a period of years from 1930 to 1936, inclusive. Of the amount of $3,756.80, $563.18 represents a rebate on account of purchases made in 1933 and $657.50 represents a rebate on account of purchases made in 1935. The petitioner concedes that the rebates received in 1937 applicable to purchases in other years are includable in income in 1937, but contends that the above amounts applicable to 1933 and 1935 are not includable in 1937 income for the reason that in 1933 and 1935 the petitioner sustained losses and gained no tax advantage by reason of the overaccrual of purchases in the above amounts.

In *National Bank of Commerce of Seattle*, 40 B. T. A. 72; affd., 115 Fed. (2d) 875, it was stated:

It is now well settled that where amounts previously deducted from income for losses, expenses, bad debts, taxes, etc., which effect an offset of taxable income, are recovered in subsequent years, such recoveries "should be reported as a part of gross income for the year in which * * * recovered." *Estate of William H. Block*, 39 B. T. A. 338; *Dixie Margarine Co.*, 38 B. T. A. 471. The converse of this proposition is also true—that if such amounts so deducted did not effect an offset of taxable income for the year in which deducted, then recoveries in subsequent years should not be included in gross income in the years of recovery. *Central Loan & Investment Co.*, 39 B. T. A. 981. * * *

The evidence shows that the petitioner's income tax returns for 1933 and 1935 showed net losses in excess of approximately $17,000 and $74,000, respectively. It is apparent that the deductions in 1933 and 1935 of the amounts herein involved accomplished no reduction in tax liability of petitioner in such years. The amounts of $563.18 and $657.50, representing recoveries on purchases made in 1933 and 1935, respectively, do not constitute taxable income to petitioner in 1937.

The respondent concedes that the amount of $550.59 should be excluded from income in 1937. Effect will be given to this concession upon recomputation under Rule 50.

*Decision will be entered under Rule 50.*